STEVEN A. GIBSON, ESQ.
Nevada Bar No. 6656
sgibson@righthaven.com
J. CHARLES COONS, ESQ.
Nevada Bar No. 10553
ccoons@righthaven.com
JOSEPH C. CHU, ESQ.
Nevada Bar No. 11082
jchu@righthaven.com
Righthaven LLC
9960 West Cheyenne Avenue, Suite 210
Las Vegas, Nevada 89129-7701
(702) 527-5900
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| RIGHTHAVEN LLC, a Nevada limited-liability company,<br><br>    Plaintiff,<br><br>v.<br><br>HYDE PARK COMMUNICATIONS, INC., a District of Columbia corporation,<br><br>    Defendant. | Case No.: 2:10-cv-01064<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

    Righthaven LLC ("Righthaven") complains as follows against Hyde Park Communications, Inc. ("Hyde Park") on information and belief:

### **NATURE OF ACTION**

    1.    This is an action for copyright infringement pursuant to 17 U.S.C. § 501.

## PARTIES

2. Righthaven is, and has been at all times relevant to this lawsuit, a Nevada limited-liability company with its principal place of business in Nevada.

3. Righthaven is, and has been at all times relevant to this lawsuit, in good standing with the Nevada Secretary of State.

4. Hyde Park is, and has been at all times relevant to this lawsuit, a District of Columbia corporation.

5. Hyde Park is, and has been at all times relevant to this lawsuit, identified by the current registrar, GoDaddy.com, Inc. ("GoDaddy"), as the registrant, administrative contact, and technical contact for the Internet domain found at <safeandsecureig.org> (the "Domain").

6. As of June 29, 2010, Hyde Park claims ownership of the copyright(s) in the literary works posted as part of the content accessible through the Domain (said content accessible through the Domain known herein as the "Website") as evidenced by a copyright notice displayed on the Website: "© 2010 Safe & Secure Internet Gambling Initiative."

## JURISDICTION

7. This Court has original subject matter jurisdiction over this copyright infringement action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

8. Righthaven is the owner of the copyright in the literary work entitled: "Group changes stance on Net bets" (the "Work"), attached hereto as Exhibit 1.

9. At all times relevant to this lawsuit, the Work has depicted and depicts the original source publication as the Las Vegas Review-Journal.

10. Hyde Park willfully copied, on an unauthorized basis, the Work from a source emanating from Nevada.

11. On or about March 25, 2010, Hyde Park displayed, and continues to display, an unauthorized reproduction of the Work (the "Infringement"), attached hereto as Exhibit 2, on the Website.

12. At all times relevant to this lawsuit, the Infringement has depicted and depicts the original source publication as the Las Vegas Review-Journal.

13. The subject matter, at least in part, of the Work and the Infringement, is the American Gaming Association and its position on Internet gambling.

14. At all times relevant to this lawsuit, Hyde Park knew that the Work was originally published in the Las Vegas Review-Journal.

15. At all times relevant to this lawsuit, Hyde Park knew that the Infringement was and is of specific interest to Las Vegas, Nevada residents.

16. Hyde Park's display of the Infringement was and is purposefully directed at Nevada residents.

17. Hyde Park willfully copied, on an unauthorized basis, the literary work entitled: "House panel OKs Internet betting bill" (the "House Panel Article"), attached hereto as Exhibit 3, from a source emanating from Nevada.

18. On or about September 18, 2008, Hyde Park displayed, and continues to display, the House Panel Article on the Website.

19. Hyde Park's display of the House Panel Article was and is purposefully directed at Nevada residents.

20. Hyde Park willfully copied, on an unauthorized basis, the literary work entitled: "Overturning the Web gambling ban" (the "Gambling Ban Article"), attached hereto as Exhibit 4, from a source emanating from Nevada.

21. On or about April 26, 2008, Hyde Park displayed, and continues to display, the Gambling Ban Article on the Website.

22. Hyde Park's display of the Gambling Ban Article was and is purposefully directed at Nevada residents.

23. Hyde Park willfully copied, on an unauthorized basis, the literary work entitled: "Wanna bet?" (the "Wanna Bet Article"), attached hereto as Exhibit 5, from a source emanating from Nevada.

24. On or about March 9, 2008, Hyde Park displayed, and continues to display, the Wanna Bet Article on the Website.

25. Hyde Park's display of the Wanna Bet Article was and is purposefully directed at Nevada residents.

26. Hyde Park willfully copied, on an unauthorized basis, the literary work entitled: "'Bizarre' legislation" (the "Bizarre Article"), attached hereto as Exhibit 6, from a source emanating from Nevada.

27. On or about April 3, 2008, Hyde Park displayed, and continues to display, the Bizarre Article on the Website.

28. Hyde Park's display of the Bizarre Article was and is purposefully directed at Nevada residents.

29. Hyde Park willfully copied, on an unauthorized basis, the literary work entitled: "'Midnight rulemaking' on Internet gaming" (the "Midnight Rulemaking Article"), attached hereto as Exhibit 7, from a source emanating from Nevada.

30. On or about November 11, 2008, Hyde Park displayed, and continues to display, the Midnight Rulemaking Article on the Website.

31. Hyde Park's display of the Midnight Rulemaking Article was and is purposefully directed at Nevada residents.

32. Hyde Park willfully copied, on an unauthorized basis, the literary work entitled: "The Poker Lobby" (the "Lobby Article"), attached hereto as Exhibit 8, from a source emanating from Nevada.

33. On or about April 22, 2009, Hyde Park displayed, and continues to display, the Lobby Article on the Website.

34. Hyde Park's display of the Lobby Article was and is purposefully directed at Nevada residents.

35. Hyde Park willfully copied, on an unauthorized basis, the literary work entitled: "Executive sees future in online betting" (the "Executive Article"), attached hereto as Exhibit 9, from a source emanating from Nevada.

36. On or about November 18, 2009, Hyde Park displayed, and continues to display, the Executive Article on the Website.

37. Hyde Park's display of the Executive Article was and is purposefully directed at Nevada residents.

38. Hyde Park willfully copied, on an unauthorized basis, the literary work entitled: "Online betting gains backer" (the "Backer Article"), attached hereto as Exhibit 10, from a source emanating from Nevada.

39. On or about May 7, 2009, Hyde Park displayed, and continues to display, the Backer Article on the Website.

40. Hyde Park's display of the Backer Article was and is purposefully directed at Nevada residents.

41. Hyde Park willfully copied, on an unauthorized basis, the literary work entitled: "Professor urges legalizing Web betting" (the "Professor Article"), attached hereto as Exhibit 11, from a source emanating from Nevada.

42. On or about July 23, 2008, Hyde Park displayed, and continues to display, the Professor Article on the Website.

43. Hyde Park's display of the Professor Article was and is purposefully directed at Nevada residents.

44. Hyde Park purposefully directs activities at Nevada residents, which activities have resulted in the copyright infringement alleged herein.

45. Hyde Park's contacts with Nevada are continuous and systematic because Hyde Park regularly published and publishes, on the Website, content emanating from Nevada-based daily publications, and such contacts have been in existence at least in excess of two years.

46.     Hyde Park's contacts with Nevada are continuous and systematic because Hyde Park displayed and displays, on the Website, advertisements for discount vacation packages to Las Vegas, Nevada, evidence of which is attached hereto as Exhibit 12.

47.     Hyde Park's contacts with Nevada are continuous and systematic because Hyde Park published and publishes, on the Website, information about sports wagering and other gambling activities specially-oriented to Las Vegas, Nevada, and such contacts have been in existence at least in excess of two years.

## VENUE

48.     The United States District Court for the District of Nevada is an appropriate venue, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claim for relief are situated in Nevada.

49.     The United States District Court for the District of Nevada is an appropriate venue, pursuant to 28 U.S.C. § 1391(c), because Hyde Park is subject to personal jurisdiction in Nevada.

## FACTS

50.     The Work constitutes copyrightable subject matter, pursuant to 17 U.S.C. § 102(a)(1).

51.     Righthaven is the owner of the copyright in and to the Work.

52.     The Work was originally published on or about March 25, 2010 (the "Publication Date").

53.     On May 26, 2010, the United States Copyright Office (the "USCO") granted Righthaven the registration to the Work, copyright registration number TX0007145876 (the "Registration") and attached hereto as Exhibit 13 is evidence of the Registration in the form of a printout of the official USCO database record depicting the occurrence of the Registration.

54.     On or about the Publication Date, Hyde Park displayed, and continues to display, the Infringement on the Website.

55. Hyde Park replaced the Work's original title, "Group changes stance on Net bets," with a new title, "Gaming Lobby Says Internet Gambling Can Be Regulated."

56. Hyde Park did not seek permission, in any manner, to reproduce, display, or otherwise exploit the Work.

57. Hyde Park was not granted permission, in any manner, to reproduce, display, or otherwise exploit the Work.

## CLAIM FOR RELIEF: COPYRIGHT INFRINGEMENT

58. Righthaven repeats and realleges the allegations set forth in Paragraphs 1 through 57 above.

59. Righthaven holds the exclusive right to reproduce the Work, pursuant to 17 U.S.C. § 106(1).

60. Righthaven holds the exclusive right to prepare derivative works based upon the Work, pursuant to 17 U.S.C. § 106(2).

61. Righthaven holds the exclusive right to distribute copies of the Work, pursuant to 17 U.S.C. § 106(3).

62. Righthaven holds the exclusive right to publicly display the Work, pursuant to 17 U.S.C. § 106(5).

63. Hyde Park reproduced the Work in derogation of Righthaven's exclusive rights under 17 U.S.C. § 106(1).

64. Hyde Park created an unauthorized derivative of the Work in derogation of Righthaven's exclusive rights under 17 U.S.C. § 106(2).

65. Hyde Park distributed, and continues to distribute, an unauthorized reproduction of the Work on the Website, in derogation of Righthaven's exclusive rights under 17 U.S.C. § 106(3).

66. Hyde Park publicly displayed, and continues to publicly display, an unauthorized reproduction of the Work on the Website, in derogation of Righthaven's exclusive rights under 17 U.S.C. § 106(5).

67. Hyde Park has willfully engaged in the copyright infringement of the Work.

68. Hyde Park's acts as alleged herein, and the ongoing direct results of those acts, have caused and will continue to cause irreparable harm to Righthaven in an amount Righthaven cannot ascertain, leaving Righthaven with no adequate remedy at law.

69. Unless Hyde Park is preliminarily and permanently enjoined from further infringement of the Work, Righthaven will be irreparably harmed, and Righthaven is thus entitled to preliminary and permanent injunctive relief against further infringement by Hyde Park of the Work, pursuant to 17 U.S.C. § 502.

## **PRAYER FOR RELIEF**

Righthaven requests that this Court grant Righthaven's claim for relief herein as follows:

1. Preliminarily and permanently enjoin and restrain Hyde Park, and Hyde Park's officers, agents, servants, employees, attorneys, parents, subsidiaries, related companies, partners, and all persons acting for, by, with, through, or under Hyde Park, from directly or indirectly infringing the Work by reproducing the Work, preparing derivative works based on the Work, distributing the Work to the public, and/or displaying the Work, or ordering, directing, participating in, or assisting in any such activity;

2. Direct Hyde Park to preserve, retain, and deliver to Righthaven in hard copies or electronic copies:

    a. All evidence and documentation relating in any way to Hyde Park's use of the Work, in any form, including, without limitation, all such evidence and documentation relating to the Website;

    b. All evidence and documentation relating to the names and addresses (whether electronic mail addresses or otherwise) of any person with whom Hyde Park has communicated regarding Hyde Park's use of the Work; and

    c. All financial evidence and documentation relating to Hyde Park's use of the Work;

3. Direct GoDaddy and any successor domain name registrar for the Domain to lock the Domain and transfer control of the Domain to Righthaven;

4. Award Righthaven statutory damages for the willful infringement of the Work, pursuant to 17 U.S.C. § 504(c);

5. Award Righthaven costs, disbursements, and attorneys' fees incurred by Righthaven in bringing this action, pursuant to 17 U.S.C. § 505;

6. Award Righthaven pre- and post-judgment interest in accordance with applicable law; and

7. Grant Righthaven such other relief as this Court deems appropriate.

**DEMAND FOR JURY TRIAL**

Righthaven requests a trial by jury pursuant to Fed. R. Civ. P. 38.

Dated this thirtieth day of June, 2010.

RIGHTHAVEN LLC

By: /s/ Joseph C. Chu
STEVEN A. GIBSON, ESQ.
Nevada Bar No. 6656
J. CHARLES COONS, ESQ.
Nevada Bar No. 10553
JOSEPH C. CHU, ESQ.
Nevada Bar No. 11082
9960 West Cheyenne Avenue, Suite 210
Las Vegas, Nevada 89129-7701
Attorneys for Plaintiff